UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE, a Minor,
THROUGH NEXT FRIEND,
BOB DOE,

    Plaintiff,

v.

THE DISTRICT OF COLUMBIA *et al.*,

    Defendants.

Civil Action No.  03-1789 (GK/JMF)

## MEMORANDUM ORDER

This case was referred to me by Judge Kessler to resolve all discovery disputes. Currently pending and ready for resolution is <u>The District of Columbia's Partial Consent Emergency Motion to Compel the Deposition Testimony of [Bob Doe]</u> [#153].  For the reasons stated herein, it is, hereby, **ORDERED** that the motion is **GRANTED IN PART and DENIED IN PART**.

**I.   FACTUAL BACKGROUND**

In March 2002, abuse and neglect proceedings were initiated against Bob and Mary Doe in D.C. Superior Court.  During these proceedings, Bob Doe was represented by Pamela Roth[1] ("Roth").  His son, John Doe, was represented by a guardian *ad litem*, James King.  During the proceedings, the D.C. Superior Court Judge also appointed attorneys from Arnold & Porter to assist John Doe because of "the Court's review of the file and the Court's dismay at the absence

---

[1] Prior to Roth's representation, Bob Doe had been represented by another attorney, but that representation is irrelevant for purposes of this memorandum.

of any pleadings filed . . . in this case." <u>The District of Columbia's Reply in Support of Its Partial Consent Emergency Motion to Compel the Deposition Testimony of Bob Doe</u> ("Reply") at 3 n.3 (quoting the Appointment Order). The court also noted that "[s]omeone should have addressed the numerous placements of [John Doe] for a three-month period, the inappropriate placement of [John Doe] in a group home at the age of seven, and the sexual abuse allegations." <u>Memorandum of Points and Authorities in Opposition to the District of Columbia's Partial Consent Emergency Motion to Compel the Deposition Testimony of Bob Doe</u> ("Opp.") at 4 (quoting the Appointment Order).

Thereafter, on behalf of Bob Doe (as Next Friend of John Doe), Arnold & Porter filed the instant lawsuit. In the complaint, Bob Doe alleges that his son was improperly treated while he was a ward of the District of Columbia. Bob Doe also alleges that his son was the victim of sexual abuse by other children who had been placed in the same group home.

## II.   THE INSTANT MOTION

Pursuant to Federal Rule of Civil Procedure ("Rule") 37(a)(2), the District of Columbia has moved this court to compel the deposition testimony of Bob Doe with respect to the following two matters: (1) communications Bob Doe had with his attorney, Pamela Roth, during and concerning the abuse and neglect proceedings that were pending in the D.C. Superior Court, and (2) communications between Bob Doe and attorneys from Arnold & Porter during the abuse and neglect proceedings. Plaintiff resists testifying as to these matters and asserts the attorney-client privilege.

### A.   Legal Standard

It is well-established that the attorney-client privilege only applies when:

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

In re Sealed Case, 737 F.2d 94, 98-99 (D.C. Cir. 1984). In this Circuit, "the attorney-client privilege is narrowly circumscribed to shield from disclosure only those communications from a client to an attorney made in confidence and for the purpose of securing legal advice." Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 200, 204 (D.D.C. 1998).

    B.    **Communications with Pamela Roth**

In its motion, the District argues that Bob Doe "waived the attorney-client privilege with respect to testimony regarding his conversations with his attorney, Pamela Roth" because he previously offered testimony about conversations he had with Roth, and these discussions related to his concerns for his son. Memorandum of Points and Authorities in Support of the District of Columbia's Partial Consent Emergency Motion to Compel the Deposition Testimony of [Bob Doe] ("Mem.") at 5. The District also contends that Bob Doe could not have had a reasonable expectation that some of his communications with counsel were confidential because they were subsequently incorporated into a report to the court. This report, *inter alia*, challenged the credibility of John Doe. Reply at 5-6. Accordingly, the District moves this court to compel Bob Doe to "fully disclose the conversations he had with [Roth] concerning the abuse and neglect proceedings." Mem. at 6.

The District is correct, but only in part. This court finds that, by virtue of his previous deposition testimony,[2] Bob Doe did *not* waive the attorney-client privilege with respect to all of his communications with Roth. Indeed, in his March 29, 2005 deposition, Bob Doe did not reveal the substance of any conversation he had with Roth. Rather, he confirmed that he discussed certain topics with his attorney. The fact that such conversations occurred is not privileged information. The matters that are privileged are the substance of the conversations, which Bob Doe did not reveal. Accordingly, he did not waive the attorney-client privilege with respect to all of his communications with Roth.

It is true, however, that during the abuse and neglect proceedings, some of the information Bob Doe provided to his counsel was memorialized in a report to the court. Any information that Bob Doe communicated to Roth that he knew or reasonably should have known would be communicated to the court (*i.e.,* a third party) is not protected by the attorney-client privilege because the client could not have intended for that communication to be confidential. Accordingly, this court will compel Bob Doe to disclose any information he shared with counsel that he knew or reasonably should have known would be communicated to the court either in a report or otherwise, because such information is not protected by the attorney-client privilege.

### C. Communications with Attorneys for Arnold & Porter

The District insists that Bob Doe has failed to establish that he was, or sought to become, a client of Arnold & Porter "during the time period about which the information is sought." Mem. at 4. The District also insists that, because the abuse and neglect proceedings placed Bob

---

[2] Bob Doe's deposition commenced on March 29, 2005, but it was not completed. The deposition will resume today, which is why the court is presently resolving the "emergency" motion to compel.

Doe and his son in an adversarial relationship, and because Arnold & Porter "represented" John Doe during these proceedings, it is impossible that Arnold & Porter and Bob Doe had an attorney-client relationship while the abuse and neglect proceedings were underway.  Finally, the District argues that plaintiff has failed to demonstrate that any communications made regarding the abuse and neglect case were to secure legal advice.  In its reply, the District clarifies that it only seeks to inquire about "the abuse and neglect case and not the civil lawsuit." Reply at 2.

In response, plaintiff attaches his own affidavit and the affidavit of Drew Harker ("Harker"), the lead Arnold & Porter attorney in the instant lawsuit.  The pleading and Harker's affidavit clearly indicate that "[s]ince its earliest involvement with John Doe, Arnold & Porter's primary objective was to file a civil lawsuit on his behalf." Opp. at 3; Harker Dec. ¶ 4.  Harker knew that, because John Doe is a minor child, any lawsuit would have to be brought on his behalf by means of a "Next Friend," and Arnold & Porter quickly identified Bob Doe as the likely Next friend. Opp. at 5.  Plaintiff also states that "each and every conversation between Bob Doe and an Arnold & Porter attorney concerned the filing of this lawsuit, along with the various strategic decisions, litigation judgments, and case analysis related thereto . . . [and that these communications] were intended to remain confidential." Opp. at 5. See also Harker Dec. ¶ 7.

In light of the concerns raised in the Appointment Order and the sworn statements of Harker, who is an officer of this court, this court concludes that plaintiff has met his burden of showing that his communications with Arnold & Porter attorneys are protected by the attorney-client privilege.  The affidavits show that the conversations occurred at a time when Bob Doe and Arnold & Porter contemplated an attorney-client relationship, and the communications were made for the purposes of securing legal advice (namely, the initiation of the instant lawsuit).

Plaintiff has also shown that he intended these communications to be confidential. That there was a theoretical or actual adversarial relationship between John and Bob Doe in the abuse and neglect proceedings does not destroy the attorney-client privilege, especially considering the fact that, for purposes of the civil lawsuit, the father and son's interests would be aligned and, in fact, Bob Doe would serve as John Doe's agent. Accordingly, this court will not compel Bob Doe to answer any questions regarding any confidential conversations he had with Arnold & Porter attorneys while he sought their legal advice regarding the instant lawsuit.

    **SO ORDERED.**

Dated:                                                                          JOHN M. FACCIOLA
                                                                                 UNITED STATES MAGISTRATE JUDGE