## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**JOHN DOE, a Minor,**
**THROUGH NEXT FRIEND,**
**BOB DOE,**

      **Plaintiff,**

      **v.**

**THE DISTRICT OF COLUMBIA** *et al.*,

      **Defendants.**

Civil Action No.  03-1789 (GK/JMF)

## MEMORANDUM OPINION

This case was referred to me by Judge Kessler to resolve all discovery disputes.

Currently pending and ready for resolution is <u>Defendant District of Columbia's Motion for</u>

<u>Protective Order</u> ("Def.'s Mot.") [#168].  For the reasons stated herein, the motion is granted in

part and denied in part.

## I.     FACTUAL BACKGROUND

Plaintiff John Doe, a minor child, alleges, through his next friend Bob Doe, that he was

physically and sexually abused while in the care and control of the District of Columbia, in

violation of defendant's duties under the United States Constitution, federal law, and District of

Columbia law.  In particular, plaintiff brings claims of negligence and of civil rights violations

under the Fifth Amendment and 42 U.S.C. § 1983.  The central incidents of abuse at issue in this

case allegedly involved three other minors and occurred in April 2002 while plaintiff resided at a

group home called Columbia House II ("CH II"), operated by Associates for Renewal in

1

Education, Inc. ("ARE"), a private, not-for-profit foster care contractor for the District of

Columbia's Child and Family Services Agency ("CFSA").  Following the April 2002 incident,

plaintiff was removed from CH II and eventually placed in a therapeutic foster home operated by

PSI Family Services, Inc. ("PSI"), another private, not-for-profit foster care contractor for CFSA.

PSI placed plaintiff in a foster home with other children, allegedly against CFSA instructions and

without informing the foster mother of his history of abuse and disruptive behavior.

On March 16, 2005, plaintiff filed his Notice of Deposition for the District of Columbia,

pursuant to Federal Rule of Civil Procedure ("Rule") 30(b)(6).  Defendant objected to various

topics for deposition on the grounds they were overly broad, burdensome, or privileged.  The

parties attempted to resolve the dispute, with plaintiff conceding one issue but with the parties

failing to reach a complete agreement.  Plaintiff's counsel suggested that, if defendant's counsel

would "be making a 'privilege' objection to any questions regarding topics 1, 2, 11, 12, and 17 –

making the deposition a complete waste of time for all parties – then [it] should . . . file [a]

motion for protective order."  Def.'s Mot., Ex. B, at 2.  Defendant filed the instant motion on

May 13, 2005.

In response, plaintiff cancelled the deposition in question and filed <u>Plaintiff's</u>

<u>Memorandum of Points and Authorities in Opposition to Defendant District of Columbia's May</u>

<u>11, 2005 Motion for Protective Order and in Support of Plaintiff's Request for Fees and Costs</u>

("Pl.'s Opp'n"), in which he asserts that defendant fails to show good cause for its objections and

that those objections are premature and nonspecific.  Defendant then filed <u>The District of</u>

<u>Columbia's Reply Memorandum in Support of Its Motion for Protective Order</u> ("Def.'s Reply"),

asserting its motion was appropriate because it sought to protect privileged information and

restrict inquiries not limited in time or scope.

## II.   DISCUSSION

Defendant filed this motion for protective order pursuant to Rule 26(c), certifying that it

in good faith conferred with plaintiff in an effort to resolve the dispute without court action.

### A.      Legal Standards

When moving for a protective order to limit discovery, the movant must establish "good

cause" under Rule 26(c) "by demonstrating the specific evidence of the harm that would result."

Jennings v. Family Mgmt., 201 F.R.D. 272, 275 (D.D.C. 2001).  To do so, the movant must

articulate specific facts to support its request and cannot rely on speculative or conclusory

statements.  Id. (citing Alexander v. F.B.I., 186 F.R.D. 71, 74 (D.D.C. 1998)).  Accordingly,

courts apply a balancing test, weighing the movant's proffer of harm against the adversary's

"significant interest" in preparing for trial.  Id. (citing Lohrenz v. Donnelly, 187 F.R.D. 1, 3

(D.D.C. 1999); Alexander v. F.B.I., 186 F.R.D. at 75)).

### B.      Substance of Plaintiff's Motion

In its motion for protective order, defendant objects to ten of plaintiff's topics for the

30(b)(6) deposition.  As a preliminary matter, before discussing the topics in turn, I address

plaintiff's contention that defendant has asserted its privileges prematurely and that they should

be raised only at deposition in the event an objectionable question is asked.  He asserts that this is

how discovery "properly unfold[s]" and that the "[i]ssuance of a protective order at this stage is

both unnecessary and unprecedented."  Pl.'s Opp'n at 2.  I disagree.  Indeed, courts have broad

discretion in deciding when to issue protective orders and to what degree they should provide

protection.  Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36 (1984).  "If the responding party

believes that the information sought by a discovery request is privileged or subject to some rule

of confidentiality, the responding party must object and/or apply to the court for a protective

order." Gray v. Faulkner, 148 F.R.D. 220, 222 (N.D. Ind. 1992).  I therefore will not dismiss

defendant's motion for protective order for timing or procedural reasons.  Instead, I will examine

whether protection is appropriate with respect to any or all of the topics at issue.

    1.    *Topic Number 2*

Deposition Topic Number 2 seeks testimony regarding

> [a]ll federal, state, and local laws, regulations, and rules applicable
> to the District, relating to: (a) the District's placement, monitoring,
> and care of children in foster environments, including group
> homes; (b) the operation and monitoring of Columbia House II and
> any other youth residential facilities; (c) the District's Employment
> Practices and Policies; (d) the District's Training Practices and
> Policies; (e) the District's monitoring, reporting, and methods of
> addressing instances of possible sexual abuse, physical abuse,
> emotional abuse, and/or neglect of children in its custody or placed
> in the custody of others by CFSA; and (f) the allegations of the
> First Amended Complaint, and the representations the District has
> made in its various submissions in this matter.

Def.'s Mot., Ex. A, at 2-3.

    The dispute over Deposition Topic Number 2 turns on the question of whether a

deposition topic regarding the applicability of laws and regulations is a matter of legal conclusion

or privileged legal analysis.  Federal Rule of Evidence 704 suggests that legal conclusions are

not, *per se*, inadmissible.  See Fed. R. Evid. 704 advisory committee notes ("The basic approach

to opinions, lay and expert, in these rules is to admit them when helpful to the trier of fact.").

Because it may lead to the discovery of admissible evidence, that is, an opinion that is helpful to

the trier of fact, this topic is not, *per se*, improper.  Even so, plaintiff maintains he will not

inquire into any "legal conclusions" but instead will ask only that a witness "identify the regulations he or she deals with on a daily basis."  Pl.'s Opp'n at 4.  As long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence" (*e.g.*, information that may help the trier of fact appreciate defendant's understanding of and attitude toward its task of providing foster care), this court will allow that discovery.  Fed. R. Civ. P. 26(b)(1).

In addition, courts in this circuit have not recognized an independent privilege for "legal conclusions" or "legal analysis."  Any such privilege, it seems, must conform to the elements of a recognized privilege, such as the attorney-client privilege, which applies only if

> (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client.

United States v. KPMG LLP, 237 F. Supp. 2d 35, 40 (D.D.C. 2002) (citation omitted).  But, mere legal analysis or conclusion is not, by itself, protected.  In order for the privilege to apply, defendant must clearly demonstrate that this standard for the attorney-client privilege has been met.  Because it has not yet done so, the court will not sustain the privilege at this time.

Defendant also asserts that it need not answer questions on this deposition topic because such answers are protected by the deliberative process privilege.  Def.'s Mot. at 5.  The deliberative process privilege protects from disclosure "documents reflecting advisory opinions,

recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 8 (2001).  Only materials that contain communications that are both predecisional and deliberative are protected.  Tri-State Hosp. Supply Corp. v. U.S., 226 F.R.D. 118, 134 (D.D.C. 2005) (citing Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993)).  Absent a showing of its use in policy deliberations, legal analysis or conclusion is not protected by the deliberative process privilege.

Although defendant has raised this privilege, it has not adequately asserted it.  To properly assert the deliberative process privilege, defendant must "establish a formal, considered, detailed claim of privilege." Id. at 134 n.13.  In Tri-State, I held that a government defendant's obligation to formally invoke the privilege did not arise until plaintiff filed a motion to compel. Id. at 134.  Similarly, to avoid waiving the privilege, defendant must make a detailed argument, including affidavits from the proper governmental authorities, in support of the privilege. Defendant has yet to make such an argument in support of its motion for protective order. Without a specific articulation of the rationale supporting the privilege, the court cannot rule on whether the privilege applies.

Finally, defendant maintains that plaintiff's request is overly broad.  This objection fails for two reasons.  First, this argument is not specific enough to show good cause in that defendant has not "demonstrat[ed] the specific evidence of the harm that would result" by allowing the topic. Jennings, 201 F.R.D. at 275 (citation omitted). See also Athridge v. Aetna Cas. & Sur. Co., 184 F.R.D. 181, 190-91 (D.D.C. 1998) (stating that conclusory boilerplate objections, whether asserted in response to discovery requests or in discovery pleadings filed with the court,

do not comply with the Federal Rules and offer an inadequate basis for the court to rule on

discovery disputes).  Second, plaintiff has narrowed the scope of the topic, stating that his

questions on this topic will ask defendant's designee only to "identify the regulations he or she

deals with on a daily basis."  Pl.'s Opp'n at 4.  Therefore, even if the objection were specific

enough, plaintiff has sufficiently narrowed the topic to make its scope appropriate for the

30(b)(6) deposition.

Accordingly, defendant's motion with respect to Deposition Topic Number 2 is granted in

part and denied in part.  Plaintiff has represented to the court that he is not seeking complex legal

analysis from defendant, and he may not do so.  Thus, plaintiff may not inquire broadly into the

applicability of all possible laws.  Likewise, defendant's designee need not provide information

protected by the attorney-client privilege, provided that defendant establishes that all of the

privilege's elements have been met.  However, defendant's designee must identify those laws,

regulations, and rules that, in that designee's understanding, regularly inform defendant's foster

care work.

2.      *Topic Numbers 3 & 4*

Deposition Topic Number 3 seeks testimony regarding

> [a]ll contracts and other agreements involving the District and
> ARE, relating to: (a) ARE's operation of Columbia House II and
> other youth residential facilities; (b) ARE's Employment Practices
> and Policies; (c) ARE's Training Practices and Policies; and (d) the
> allegations of the First Amended Complaint, and the
> representations the District has made in its various submissions in
> this matter.

Def.'s Mot., Ex. A, at 3.  Deposition Topic Number 4 seeks testimony regarding

> [a]ll contracts and other agreements involving the District and PSI,

7

> relating to: (a) PSI's placement of children in foster environments;
> (b) PSI's Employment Practices and Policies; (c) PSI's Training
> Practices and Policies; and (d) the allegations of the First Amended
> Complaint, and the representations the District has made in its
> various submissions in this matter.

Def.'s Mot., Ex. A, at 3.

Defendant asserts that plaintiff's requests for testimony regarding contracts and other

agreements pertaining to ARE and PSI are overly broad, given the number of facilities at issue,

and that plaintiff's request should be limited to CH II and foster homes involved in plaintiff's

case.  Indeed, defendant states that, because ARE and PSI operate a number of group and foster

homes, many with different contract monitors, it "will be forced to expend significant resources

accumulating sufficient information for its designee."  Def.'s Reply at 4.  Defendant further notes

that "PSI alone has contracted with the District for 116 therapeutic foster homes and 70

traditional homes," id. at 4, but says nothing about how many homes are run by ARE.

Given these representations, it is the court's view that Deposition Topic Number 3(a)

should be limited to all contracts and other agreements involving the District and ARE as they

relate to ARE's operation of CH II.  Similarly, Deposition Topic Number 4(a) should be limited

to all contracts and other agreements involving the District and PSI as they relate to PSI's

placement of children in the foster care homes in which Doe was placed.  Plaintiff may also ask

the 30(b)(6) witness whether these contracts were the same or different from contracts that

pertained to other group homes and foster care homes.  If they are mirror images, the court sees

no need for the 30(b)(6) witness to testify as to each of the contracts for hundreds of group and

foster care homes.  If they are different, plaintiff may continue his inquiry to flesh out the

differences of which the witness is aware, and plaintiff may then serve document requests on the

District so that he can review the contracts himself, provided he establishes that the other contracts are relevant or likely to lead to relevant evidence.

Finally, the court finds that defendant's assertion of privilege with respect to this topic is unavailing.  Defendant maintains that "the submissions made by the District are intricately intertwined with the attorney-client and/or deliberative process privileges and should be precluded from inquiry."  Def.'s Mot. at 6.  But, as plaintiff rightly points out in addressing defendant's concerns about becoming familiar with ARE's and PSI's policies and practices, "the plain language of the [t]opic makes clear that [p]laintiff will inquire only as to 'contracts and other agreements . . .'" as they pertain to those policies and practices.  Pl.'s Opp'n at 6 (quoting Deposition Topics 3 and 4).  Likewise, plaintiff will inquire only as to contracts and other agreements as they pertain to statements made in defendant's submissions in this matter, not the privileged relationships or processes that produced those submissions.  Plaintiff may, for example, seek to verify assertions made by defendant by discussing the contracts or other agreements between defendant and ARE or PSI.  Such inquiry into unprivileged fact is clearly permissible under the rules of discovery.

For these reasons, defendant's motion with respect to Deposition Topic Numbers 3 and 4 is granted in part and denied in part.

3.    *Topic Numbers 5 & 6*

Deposition Topic Number 5 seeks testimony regarding "[t]he financial relationship between ARE and the District, including but not limited to any funding of ARE by the District, profit sharing between the District and ARE, the District tax provisions relating to ARE, and ARE's ability to satisfy judgments from the District treasury."  Def.'s Mot., Ex. A, at 3.

9

Deposition Topic Number 6 seeks testimony regarding "[t]he financial relationship between PSI and the District, including but not limited to any funding of PSI by the District, profit sharing between the District and PSI, the District tax provisions relating to PSI, and PSI's ability to satisfy judgments from the District treasury."  Def.'s Mot., Ex. A, at 3-4.

In its pleading, defendant states that "there is no evidence of 'profit sharing,' 'funding arrangement' (other than a standard contract for services) or 'tax provisions' between the District of Columbia and ARE or PSI. . . ."  Def.'s Reply at 5.  But, counsel's statement that there is no evidence of what plaintiff seeks is not a substitute for testimony, under oath, by the 30(b)(6) witness.

Furthermore, information related to defendant's financial relationships with ARE and PSI is relevant to establishing whether those defendants were acting under color of state law when they allegedly deprived plaintiff of his rights in violation of section 1983.  See, e.g., Brentwood Acad. v. Tennessee Secondary Sch. Athletic Assoc., 531 U.S. 288, 298-99 (2001) (section 1983 defendant acts under color of state law if public officials and private entity are sufficiently "intertwined" or if state uses financial control to direct private entities activities); Rodriguez-Garcia, 904 F.2d at 98-99 (listing factors relevant to "color of state law" inquiry, including extent to which private entity is financed by state treasury, is immune from state taxation, or can satisfy judgments against it from the state treasury).  In addition, a contractual relationship between a private entity and the state is not always enough to establish that the private entity acted under color of state law.  See, e.g., Simescu v. Emmet County Dep't of Soc. Servs., 942 F.2d 372, 375 (6th Cir. 1991) (holding, in a section 1983 suit for abuse against a daycare provider, "the mere existence of a contract between a governmental agency and a private party is insufficient to

10

create state action") (citing <u>Dobyns v. E-Systems, Inc.</u>, 667 F.2d 1219, 1227 (5th Cir. 1982));

<u>Rodriguez-Garcia</u>, 904 F.2d at 97 (citations omitted) (suggesting that, even where a management

contract between the private corporation and the state existed, the private party did not act under

color of state law).  Plaintiff has a significant interest in ascertaining the nature of the financial

relationships, which are distinct from the contractual relationships, between the District and ARE

and the District and PSI so that he can support his claim that ARE and PSI were acting under

color of state law.

It should be noted that, upon defendant's objection to these and other topics as "overly

broad," plaintiff limited the scope of his requests to the period 1995 to the present.[1]  Therefore,

defendant's motion with respect to Deposition Topic Numbers 5 and 6 is granted in part and

denied in part.  Defendant shall answer plaintiff's questions on this topic, but such questions will

be limited to the time period of 1995 to the present.

　　　　4.　　　*Topic Numbers 7 & 8*

Deposition Topic Number 7 seeks testimony regarding "[t]he extent and nature of any

monitoring, regulation, supervision, and/or oversight of ARE by the District, the federal

government, a court (*e.g.*, in connection with *LaShawn* receivership), or any other party."  Def.'s

Mot., Ex. A, at 4.  Deposition Topic Number 8 seeks testimony regarding "[t]he extent and

nature of any monitoring, regulation, supervision, and/or oversight of PSI by the District, the

federal government, a court (*e.g.*, in connection with *LaShawn* receivership), or any other party."

---

[1] Pl.'s Opp'n at 9 (citing Def.'s Mot., Ex. B).  Defendant objected to Deposition Topic Numbers 5, 6, 7, 8, 13, and 15 as "overly broad."  Def.'s Mot. at 6.  Therefore, in addition to any other limitations outlined in this Order, plaintiff will limit his requests on those topics to the time period 1995 to the present.

Def.'s Mot., Ex. A, at 4.

Defendant objects to these topics only to the extent that these topics concern the federal government's or the court's oversight of those entities.  Plaintiff, however, has agreed to refrain from seeking such testimony.  Def.'s Mot. at 4 (citing Ex. B).  Still, defendant seeks a protective order with respect to these topics "out of an abundance of caution."  Id. at 7.  Given plaintiff's concession, this court will grant defendant's motion with respect to those areas of oversight.

In addition, plaintiff has again limited the scope of this request to the period 1995 to the present.  Therefore, defendant's motion with respect to Deposition Topic Numbers 7 and 8 is granted with the following conditions.  Defendant shall answer plaintiff's questions on this topic, but such questions will be limited to the time period of 1995 to the present and will exclude information regarding federal government or court oversight.

> 5.    *Topic Number 13*

Deposition Topic Number 13 seeks testimony regarding "[defendant's] knowledge of [Mark Doe], [Mike Doe], and [Marshall Doe], including but not limited to: (a) all documents and other documents relating thereto; (b) their personal histories; and, (c) their conduct while in the custody of the District, before, during, and after the time they resided at Columbia House II." Def.'s Mot., Ex. A, at 5.

Although the parties originally debated the breadth and relevancy of this topic, they seem to have resolved those matters in their briefs, leaving only the issue of temporal scope.[2]  Plaintiff

---

[2] In his opposition, plaintiff asserts that the topic is properly bounded and relevant because the information it might generate is relevant to his claims of negligence against defendant.  Pl.'s Opp'n at 9-10.  In its reply, defendant yields on the issue of relevance but asserts the request is not properly bounded in temporal scope.  Def.'s Reply at 5-6.

limited the scope of this request to the period 1995 to the present following defendant's objection

to this topic as "overly broad."  Although defendant correctly points to the language of plaintiff's

letter, which limited the temporal scope of his request, as indicating that questions about the

District of Columbia's "practices" would be limited to the time period 1995 to the present,

plaintiff's opposition indicates that he meant that time period to apply to all of his inquiries, not

just those pertaining to defendant's practices.

Defendant further maintains that plaintiff, because he "concedes the five year [*sic*] time

restriction as to the alleged offenders [*sic*] conduct,"  should be entitled to information no more

than five years prior to the alleged incident.  Def.'s Reply at 6.  Indeed, in other discovery

disputes, plaintiff has limited the time period of his requests to the five years prior to the alleged

incident.  See, e.g., Plaintiff's Motion to Compel Defendant District of Columbia to Produce

Documents [#124].  Those requests are not now before the court.  Therefore, because I find

plaintiff's request to be reasonable, I will apply the limitation plaintiff has requested with respect

to these deposition topics, not the limitation he has suggested in other disputes.

Defendant's motion with respect to Deposition Topic Number 13 is granted in part and

denied in part.  Defendant shall answer plaintiff's questions on this topic, but such questions will

be limited to the time period of 1995 to the present.

### 6.    *Topic Number 15*

Deposition Topic Number 15 seeks testimony regarding

> [a]ll complaints, allegations, or past instances of sexual abuse,
> physical abuse, emotional abuse, and/or neglect relating to any
> child the District has placed in foster environments, including
> Columbia House II or any other youth residential facility, including
> but not limited to any lawsuits, administrative findings, criminal

13

findings, settlements, or other agreements arising out of or
involving such allegations.

Def.'s Mot., Ex. A, at 5-6.  Defendant asserts that plaintiff's request for deposition testimony

about complaints of abuse pertaining to any children placed in defendant's foster care facilities is

unduly burdensome, given the number of homes and children at issue, and that plaintiff's request

should be limited to group homes only.  Defendant's objection fails to show the good cause

necessary for this court to grant a protective order for several reasons.

First, the information requested is clearly relevant to plaintiff's claims.  Evidence that

others placed in defendant's care, at CH II and elsewhere, suffered abuse is crucial to plaintiff's

establishing there was a policy or practice involved, an element of his section 1983 claims.

Evidence of widespread abuse would also support his negligence claim against defendant.

Second, defendant offers no support for limiting plaintiff's request only to group homes.

Although defendant may be correct in suggesting that plaintiff may be able to establish his claims

without information regarding incidents at non-group homes, such information may,

nevertheless, be relevant to those claims and may help plaintiff establish those claims more

readily, clearly, or convincingly.

Finally, plaintiff understandably acknowledges that seeking information as to any incident

of abuse is better suited to a request for all documents pertaining to such incidents.  I will permit

the 30(b)(6) witness to be asked about his or her knowledge of such incidents and what, if

anything, the witness knows about the creation or maintenance of records pertaining to such

incidents.  A request for the actual production of the documents will have to be made pursuant to

Rule 34.

Accordingly, I will grant in part and deny in part defendant's motion for a protective order by permitting the witness to be asked about his or her knowledge of such incidents and what, if anything, the witness knows about the creation or maintenance of records pertaining to such incidents.  The time period again will be from 1995 to the present.

       7.    *Topic Number 17*

Deposition Topic Number 17 seeks testimony regarding "[t]he District's document retention policies and procedures, and the process used to collect the documents that have been produced or will be produced by the District in response to plaintiff's requests for production of documents."  Def.'s Mot., Ex. A, at 6.

Defendant asserts that plaintiff's request for information regarding defendant's document retention and production policies violates the deliberative process and attorney-client privileges. Plaintiff, asserting that he wants to know only to what extent defendant is meeting its discovery obligations, counters that such a deposition topic is routine and expressly contemplated by Rule 26(b)(1).  Although plaintiff overstates the strength of his position somewhat, Rule 26(b)(1) may be construed to allow for discovery of document production policies and procedures in allowing "[p]arties [to] obtain discovery regarding any matter, . . . including the existence, description, nature, custody, condition, and location of any . . . documents."  Fed. R. Civ. P. 26(b)(1). Plaintiff may, therefore, request information as to the "existence," "custody," or "condition" of documents, thereby establishing defendant's policies and procedures of document retention and production.  Defendant's motion with respect to Deposition Topic Number 17 is denied.

    **C.**    **Costs and Fees**

Plaintiff argues in his opposition that he should receive costs and fees associated with

15

responding to defendant's motion under Rules 26(c) and 37(a)(4)(B).  Although the court may award the opposing party costs and fees when a motion for protective order is denied, if "the court finds that the making of the motion was substantially justified or that other circumstances make an award of expenses unjust," the court may choose not to make such an award.  Fed. R. Civ. P. 37(a)(4)(B).

Defendant counters that it is unfair for plaintiff to call a motion he himself invited frivolous and he should not receive costs and fees because of that invitation.[3]  I disagree.  When plaintiff suggested defendant might do well to file a motion for protective order, he did not know defendant's specific grounds for so moving.  Plaintiff was right to assume that defendant's grounds would have some merit.  Upon seeing defendant's reasons in its memorandum, plaintiff was within his rights to ask for costs and fees.

Although I have found many of defendant's arguments in support of the motion for protective order unpersuasive, I have credited some of defendant's arguments and have narrowed the deposition topics in several instances.  In addition, plaintiff conceded several points as to the scope of the deposition topics and certain issues were clarified only because of the filing of defendant's motion.  Therefore, I find that the filing of the instant motion was substantially justified and an award of costs and fees would be unjust.  See Fed. R. Civ. P. 26(c); Fed. R. Civ. P. 37(a)(4).  Plaintiff's request is therefore denied.

## III.   CONCLUSION

---

[3] Plaintiff's counsel suggested that, if defendant's counsel would "be making a 'privilege' objection to any questions regarding topics 1, 2, 11, 12, and 17 – making the deposition a complete waste of time for all parties – then [it] should . . . file [a] motion for protective order." Def.'s Mot., Ex. B at 2.  Defendant maintains that it is "grossly unfair for the plaintiff now to suggest that the defendant's motion is frivolous and subject to sanctions.  Def.'s Reply at 2.

16

Upon consideration of the motion, the memorandum in opposition, and reply thereto, defendant's motion is granted in part and denied in part.  An Order accompanies this Memorandum Opinion.


Dated:                                                    _____
                                                          JOHN M. FACCIOLA
                                                          UNITED STATES MAGISTRATE JUDGE