UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **JOHN DOE, a Minor,**<br>**THROUGH NEXT FRIEND,**<br>**BOB DOE,**<br><br>    Plaintiff,<br><br>    v.<br><br>**THE DISTRICT OF COLUMBIA** *et al.*,<br><br>    Defendants. | Civil Action No.  03-1789 (GK/JMF) |

**MEMORANDUM**

On August 15, 2005, I issued an order granting plaintiff's emergency motion and requiring that the then-upcoming psychiatric evaluation of the minor plaintiff, John Doe, be videotaped.  The defendants moved me to reconsider my order, and on August 17, 2005, I held a hearing on that motion.  At that point, the examination was to take place on Saturday, August 20, 2005.

The hearing culminated in what I thought was the resolution of all of the defendants' concerns,[1] and I awaited a proposed order to be drafted by the parties that contained the understandings that had been reached at the hearing.  Indeed, in order to comply with the conditions we had discussed, after the hearing, the defendants made arrangements with

---

[1] Indeed, after a break at the hearing in which defense counsel conferred with their expert, Dr. Alfred agreed to the proposed resolution and indicated that, solely for the record, she would send a letter noting her objections to the court.

Georgetown University for a room equipped with a two-way mirror. Unfortunately, on the afternoon of August 19, 2005, my chambers received a phone call indicating that the defendants had decided not to participate in the completion of the order but to seek review of my initial order that the examination be videotaped. Reviewing that order without knowing what the defendants agreed to at the hearing is Hamlet without the Dane. Therefore, I will memorialize what I thought the parties had agreed upon and why I believe the agreement would have fairly met the defendants' objections and concerns.

Those objections flow, for the most part, from the examining physician's concerns that it goes against the ethics of her profession to videotape her examination without her subject's consent. She is also concerned that, under the ethics of her profession, the testing protocols she intended to use are not to be made available to anyone other than another member of her profession.[2] Finally, these protocols may also be protected by trademark or copyright laws.

First, as to consent, it borders on the silly to demand the legal consent of a child who is incapable–as a matter of law–of giving consent. In addition, the ethical principles themselves state: "Before recording the voices or images of individuals to whom they provide services, psychologists obtain permission from all such persons *or their legal representatives.*" Ethical Principles of Psychologists and Code of Conduct (2002) § 4.03 (emphasis added). At the hearing, plaintiff's counsel consented on behalf of his client, and that consent surely is effective as a matter of law. Plaintiff's counsel also informed the court that Doe's parents consented to the

---

[2] In Chiperas v. Rubin, No. Civ. A. 96-130TPJ/JMF, 1998 WL 765126, at *1 (D.D.C. Nov. 3, 1998), I discussed the significance of these ethical constraints in the context of civil discovery.

recording of the examination, and he agreed to provide written consent as well as written waiver of notification for John Doe. Despite these representations, the doctor and the defendants insisted on notifying Doe of the videotape but simultaneously objected to the child knowing he was about to be videotaped for fear that it would affect the spontaneity of his answers and thereby the accuracy of the results. The self-contradiction between insisting on securing the child's consent or notification and not having him know he is being videotaped is obvious.

Second, the parties had agreed that there would be two videotapes, one containing the testing protocols being administered and the second containing the rest of the evaluation. It was agreed that the first tape would be made available only to another psychologist or psychiatrist and then sealed to await this Court's further order. This eliminated any problem about the constraints imposed by a profession that insists that testing protocols be made available only to fellow members of the profession and postpones any concern about copyright or trademark until the presiding judge can have the matter briefed.

Finally, the ethical constraints to which the defendants point contain specific exceptions for inconsistent obligations imposed by judicial orders. See id. § 3.10(a) ("When psychologists . . . provide assessment, . . .they obtain the informed consent of the individual . . . *except when conducting such activities without consent is mandated by law . . . .*") (emphasis added). See also id. § 3.10(b) ("For persons who are legally incapable of giving informed consent, psychologists nevertheless (1) provide an appropriate explanation, (2) seek the individual's assent, (3) consider such person's preferences and best interests, and (4) obtain appropriate permission from a legally authorized person, if such *substitute* consent is permitted or required by law.") (emphasis added). Accordingly, the issuance of the stipulated order would have, in

itself, alleviated any just concern the defendants' doctor had.


Dated:                                                      _____
                                                         JOHN M. FACCIOLA
                                                         UNITED STATES MAGISTRATE JUDGE